IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**DWIGHT HURD,**

      Plaintiff,

v.                                           Civil Action No. 2:19-cv-00760

**DR. CHARLES LYE,**
**WEXFORD HEALTH SOURCES, LLC,**
**CORRECTIONAL OFFICER ABBY STOUT,**
**LEUTENANT ROGER DODD,**
**CORPORAL TERRY WHITEHAIR,**
**CORRECTIONAL OFFICER MICHAEL DEMPSEY,**
**CORRECTIONAL OFFICER JOHNNY WILSON,**
**CORRECTIONAL OFFICER JOHN KOMMER,**
**and JOHN DOE CORRECTIONAL OFFICER(S),**

      Defendants.

## COMPLAINT

1. This case arises out of systematic and repeated abuse of an inmate in the sole custody, care, and control of Defendants, who are each employed by or contracted with the West Virginia Department of Corrections and Rehabilitation (DCR), resulting in plaintiff's severe and untreated disability.

2. Over the course of less than three months, Plaintiff Dwight Hurd was subjected to chemical agents and weapons and repeatedly beaten while incarcerated with the DCR. As a result of these events, Mr. Hurd began having seizures and lost the use of his legs. Despite Mr. Hurd's clear disability, Wexford Health Sources employees, including Defendant Charles Lye, M.D., refused to send Mr. Hurd to specialists for a diagnosis, failed to provide physical therapy, and denied Mr. Hurd the use of a wheelchair for months, resulting in Plaintiff having to drag himself across the filthy prison floors to reach the showers or the telephone. As a result of this cruel and

unusual punishment, Plaintiff is likely disabled for life, as the result of the physical and mental trauma he experienced while in the custody of the West Virginia Division of Corrections and Rehabilitation.

3. Plaintiff submits this complaint pursuant to 42 U.S.C. § 1983, alleging that his rights under the Eighth Amendment to the United States Constitution were violated by Defendants when they condoned or committed excessive and wrongful force against Plaintiff during incidents in late 2017; and further were deliberately indifferent to Plaintiff's serious medical needs when they denied him the use of a wheelchair. Plaintiff further brings claims under the Americans with Disabilities Act, for Defendants' refusal to accommodate Plaintiff's physical disability by denying him access to a wheelchair, physical therapy, and other medical or mental health treatment to address his loss of use of his legs; and for Defendants' discrimination against Plaintiff, when he was required to drag himself across the prison floors to access basic necessities, such as a shower.

## PARTIES

4. Plaintiff Dwight Hurd was, at all relevant times herein, a citizen of the United States in the custody of the West Virginia DCR. Plaintiff is unable to walk and uses a wheelchair. Plaintiff is a qualified individual with a disability under the Americans with Disabilities Act. 42 U.S.C. § 12131. Plaintiff is no longer incarcerated.

5. Defendant Charles Lye, MD, was at all relevant times, an employee of Wexford Health Sources, Inc., and the medical doctor assigned to treat patients at Mount Olive Correctional Complex. In that capacity, Defendant Lye was responsible for Plaintiff's medical care while Plaintiff was an inmate at Mount Olive Correctional Complex.

6. Defendant Wexford Health Sources, Inc. (Wexford) is a national corporation that provides medical services to correctional facilities, with its principal place of business at 501

Holiday Drive, Foster Plaza Four, Pittsburgh, PA 15220. At all relevant times, Wexford was the medical provider contracted by the DCR to provide medical services to inmates housed in DCR facilities including Mount Olive Correctional Complex.

7. Defendant Abby Stout was, at all relevant times, a correctional officer employed at Salem Correctional Center. At all times alleged herein, Defendant Stout was acting under the color of law and within the apparent scope of her employment as a correctional officer. Defendant Stout is sued in her individual capacity for monetary damages.

8. Defendant Roger Dodd was, at all relevant times, a correctional officer employed at the rank of lieutenant at Salem Correctional Center. At all times alleged herein, Defendant Dodd was acting under the color of law and within the apparent scope of his employment as a correctional officer. Defendant Dodd is sued in his individual capacity for monetary damages.

9. Defendant Terry Whitehair was, at all relevant times, a correctional officer employed at the rank of corporal at Salem Correctional Center. At all times alleged herein, Defendant Whitehair was acting under the color of law and within the apparent scope of his employment as a correctional officer. Defendant Whitehair is sued in his individual capacity for monetary damages.

10. Defendant Michael Dempsey was, at all relevant times, a correctional officer employed at Mount Olive Correctional Complex. At all times alleged herein, Defendant Dempsey was acting under the color of law and within the apparent scope of his employment as a correctional officer. Defendant Dempsey is sued in his individual capacity for monetary damages.

11. Defendant Johnny Wilson was, at all relevant times, a correctional officer employed at Mount Olive Correctional Complex. At all times alleged herein, Defendant Wilson was acting

under the color of law and within the apparent scope of his employment as a correctional officer. Defendant Wilson is sued in his individual capacity for monetary damages.

12. Defendant John Kommer was, at all relevant times, a correctional officer employed at Mount Olive Correctional Complex. At all times alleged herein, Defendant Kommer was acting under the color of law and within the apparent scope of his employment as a correctional officer. Defendant Kommer is sued in his individual capacity for monetary damages.

13. Defendant John Doe Correctional Officer(s) was, at all relevant times, a correctional officer employed at Mount Olive Correctional Complex. At all times alleged herein, each Defendant John Doe was acting under the color of law and within the apparent scope of his employment as a correctional officer. Each Defendant John Doe is sued in his/her individual capacity for monetary damages.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the federal claims presented in this action pursuant to 28 U.S.C. §§ 1331, 1343 and under the Court's authority to decide pendent state law claims. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202.

15. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the events that support the allegations occurred in this judicial district.

## FACTUAL BACKGROUND

**Correctional Officers Assault Mr. Hurd**

16. On or around October 21, 2017, Plaintiff Hurd was an inmate at Salem Correctional Center (SCC) in Salem, West Virginia.

4

17. That evening, while Plaintiff was relaxing in his cell, Defendants C.O. Abby Stout and Lt. Roger Dodd entered Plaintiff's cell, demanded that Plaintiff get up and stand against the wall, and told Plaintiff they were going to teach him a lesson.

18. Plaintiff did as he was asked, but grew scared of Defendants' threatening manner.

19. As Plaintiff stood with his hands in the air and told the officers that he did not want any trouble, Defendants told him it was too late, and pulled out a can of Oleoresin Capsicum (OC), a highly concentrated form of what is commonly known as pepper spray.

20. Plaintiff told Defendants that he had asthma, and begged them not to spray him; nevertheless, Defendants Stout and Dodd sprayed Plaintiff in the face with the OC.

21. Plaintiff's asthma was diagnosed and known by Wexford and the DCR, and Plaintiff had been prescribed an inhaler to treat his asthma by Wexford in September 2017.

22. As a result of being sprayed, Plaintiff felt as though he could not breathe and began having a panic attack.

23. In his state of panic, Plaintiff began running from the officers, who then tackled him to the floor, sprayed him with OC again, and physically assaulted Plaintiff.

24. Plaintiff was then placed in full restraints and dragged into an elevator; once in the elevator, the officers leveled racial slurs against Plaintiff, who is black, and Defendant Terry Whitehair placed Plaintiff in a choke hold and physically assaulted him.

25. Following the assault, Plaintiff began experiencing pain and numbness in his legs which progressed in severity with time.

**Plaintiff Transferred to MOCC**

26. On or about October 24, 2017, Plaintiff was transferred to Mount Olive Correctional Complex (MOCC) in Fayette County, West Virginia.

27. On or about November 1, 2017, Plaintiff finally met with a Wexford doctor, Defendant Charles Lye.

28. Dr. Lye directed that Plaintiff have access to a wheelchair as a result of his loss of feeling in his left leg.

29. On or about November 14, 2017, Plaintiff suffered a fall and experienced additional pain in his neck; he informed the nursing staff that his legs and feet felt numb.

**Defendants Remove Plaintiff's Wheelchair**

30. On or about December 19, 2017, Plaintiff learned he was going to be transported to a new facility with three other inmates.

31. Based on his prior conversations with Dr. Lye, Plaintiff believed he was being transferred to a facility that would be equipped to handle a wheelchair and could provide care for Plaintiff's other medical needs.

32. Upon arriving at the transport area of MOCC, Plaintiff learned he was being transferred to Stevens Correctional Center (Stevens), in Welch, West Virginia, a facility which is not equipped to house patients in wheelchairs.

33. Plaintiff raised the issue with the transport officers; after a short period, he was informed that the DCR and Wexford had determined that Plaintiff no longer needed a wheelchair.

34. No testing or evaluation was done to support the abrupt and unwarranted change in treatment plan.

35. Plaintiff was transferred to Stevens.

**Plaintiff Denied Wheelchair and Access to Toilet at Stevens Correctional Center**

36. Upon arriving at Stevens, Plaintiff was denied access to a wheelchair and he was directed to climb steps in order to reach his cell.

37. Plaintiff was physically not able to climb the steps.

38. Thereafter, Plaintiff was placed in a cell in SCC's medical unit, which did not require climbing stairs.

39. When Plaintiff requested assistance in using the toilet, Wexford employees directed him to do it himself.

40. On one occasion, Plaintiff crawled to the toilet and attempted to pull himself up using the handrail; he was not strong enough, lost his balance and hit his head on the metal toilet paper holder.

41. On several occasions thereafter, Wexford employees watched Plaintiff crawl to the toilet before lifting him onto the toilet to enable him to relieve himself, but at no point was Plaintiff given access to a wheelchair.

**Plaintiff Physically Assaulted at MOCC, Tased for Purpose of Inflicting Pain**

42. On or about December 27, 2017, Plaintiff was transported back to MOCC.

43. Upon arrival, several correctional officers, including Defendants Michael Dempsey and Johnny Wilson, transported Plaintiff into a shower stall out of sight of video cameras.

44. Once in the stall, the officers choked Plaintiff until he was unconscious, repeatedly kicked Plaintiff in the head, and punched him with closed fists.

45. As a result of the violent assault, Plaintiff began having a seizure.

46. A nurse was called to assist, who documented that Plaintiff was lying on the floor shaking and did not respond to an ammonia capsule; Plaintiff was subsequently placed in a wheelchair and escorted to the prison infirmary.

47. Alleging that Plaintiff was being combative and aggressive, Defendants Dempsey, Wilson, and Kommer wheeled Plaintiff into a cell in the infirmary, and physically restrained

Plaintiff in the wheelchair while an unknown fourth correctional officer tased Plaintiff without justification.

48. Plaintiff was in restraints when he was tased.

49. The taser was pressed directly against Plaintiff's body, under a function called "drive stunning."

50. Drive stunning is a technique designed for the sole purpose of causing pain, and does not result in incapacitating the victim, which is the typical purpose for using a taser.

51. Defendants had no legitimate basis to use the taser on Plaintiff, and instead used it maliciously and sadistically for the sole purpose of causing pain.

52. Following this brutal assault, Plaintiff was left bleeding and with swelling on his face and head.

**Plaintiff Referred for Physical Therapy Evaluation**

53. Despite Dr. Lye having ordered the removal of the chair just a few weeks before, Plaintiff was once again provided with a wheelchair.

54. On January 23, 2018, Plaintiff was seen at Montgomery General Hospital for a physical therapy evaluation, due to his continued inability to use his legs.

55. The evaluator found that he had a very limited range of motion, diagnosed him with "paraplegia unknown etiology," and recommended a neurology consult, as well as ongoing physical therapy.

56. Upon return to MOCC, Plaintiff was seen two times for physical therapy; per medical notes, the sessions went well and Plaintiff was cooperative.

57. Thereafter, on approximately seven occasions, the facility refused to allow Plaintiff to attend his physical therapy sessions.

58. Upon information and belief, Plaintiff never received additional physical therapy while at MOCC.

59. Moreover, despite the recommendation from Montgomery General Hospital to refer Plaintiff to a neurologist, Dr. Lye and Wexford never made such a referral, and Plaintiff was never seen by a neurologist.

**Defendants Remove Plaintiff's Wheelchair, Forcing Him To Crawl**

60. On or about March 22, 2018, Plaintiff met with Dr. Lye, who informed Plaintiff that he was revoking his use of a wheelchair.

61. Dr. Lye indicated that he did not believe that Plaintiff needed the wheelchair, and diagnosed him with "somatic symptom disorder."

62. Dr. Lye noted that the outside physical therapy consult had recommended that Mr. Hurd be referred to a neurologist, but Dr. Lye disagreed with that assessment, and did not make a referral.

63. When Plaintiff asked how he was supposed to get around, Dr. Lye suggested he file a lawsuit about it.

64. Plaintiff was then returned to his segregation cell in the wheelchair, but the chair was taken at that time, and Plaintiff was left lying on the concrete floor.

65. As a result of being denied the wheelchair, Plaintiff had to drag himself across the floor of his cell to reach the toilet or to reach his door.

66. Plaintiff was unable to stand to use the sink in his cell, and thus unable to perform regular hygiene tasks; for example, Plaintiff had to brush his teeth over the toilet, as he couldn't reach the sink.

67. Furthermore, when taken out of his cell for a shower or to use the telephone, Plaintiff had to drag himself approximately 35 feet through the middle of the pod, in view of other inmates.

68. The floors in the pod where filthy, and Plaintiff would often have to drag himself through standing water, which would be on the floor as a result of inmates flooding their toilets.

69. During Plaintiff's rare opportunities to use the telephone, he was unable to reach the phone receiver.

70. On occasion, other inmates carried Plaintiff to the showers, or would hold him in order to enable him to use the telephone.

71. Such experiences were demeaning and humiliating for Plaintiff.

72. During the entire time that Defendants denied Plaintiff a wheelchair, Plaintiff denied the ability to access outdoor recreation (also called "fresh air"), to which he was legally entitled.

**Wexford Continues to Refuse Diagnostic Referral and Uses Inmates to Provide Treatment**

73. On or about March 22, 2018, after nearly two months without a wheelchair, Dr. Lye inexplicably reinstated Plaintiff's wheelchair.

74. Shortly thereafter, Plaintiff was transferred to St. Mary's Correctional Center, where he began to be treated by Dr. Beane.

75. Upon information and belief, Dr. Beane sought to refer Plaintiff to an outside specialist to help determine the basis for his loss of use of his legs.

76. Upon information and belief, Defendant Wexford refused to approve the requested referral.

77. Plaintiff was never sent to an outside specialist for diagnosis.

78. Plaintiff additionally began to receive physical therapy treatment at St. Mary's.

79. Defendant Wexford did not provide a licensed, trained physical therapist, however, and instead Plaintiff's physical therapy was provided by inmates who lacked the requisite knowledge and skills.

80. On at least one occasion, Plaintiff was further injured as a result of an untrained inmate attempting to provide physical therapy.

**Damages**

81. As a result of Defendants' conduct, Plaintiff continues to use a wheelchair, is in pain, and cannot walk on his own.

82. As a result of Defendants' physical assaults, Plaintiff now has a seizure disorder for which he takes daily medication.

83. As a result of Defendants' conduct, Plaintiff has suffered bruises, swelling, extreme pain, loss of feeling in his legs, swelling in his feet, seizures, headaches, back pain, humiliation, embarrassment, degradation, and endures ongoing mental trauma and PTSD from the repeated abuses.

### COUNT I
### VIOLATIONS OF THE UNITED STATES CONSTITUTION
### EXCESSIVE FORCE
### (42 U.S.C. § 1983)

84. Plaintiff incorporates the preceding paragraphs by reference.

85. Defendants, while acting under the color of law, violated Mr. Hurd's Eighth Amendment right to be free from cruel and unusual punishment, resulting in pain and suffering.

86. Defendants Stout, Dodd, Whitehair, Dempsey, Wilson, Kommer and John Doe Correctional Officer(s) violated Mr. Hurd's federal constitutional rights, as described and identified herein, by authorizing, committing, condoning, or failing to remedy the excessive and

wrongful force, employed against Plaintiff on or about October 21, 2017 and again on December 27, 2017.

87. The actions of said Defendants against Plaintiff were in violation of clearly established law.

88. The Eighth Amendment to the United States Constitution forbids cruel and unusual punishment through the use of force that is unnecessary, unjustified, or applied with malicious and sadistic intent for the purpose of punishment and to cause harm.

89. On October 21, 2017 and December 27, 2017, correctional officers had a "firmly established duty to ensure that legitimate instruments of control were not misused." *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984).

90. On October 21, 2017, it was clear that the use of mace, tear gas, or other chemical agents "in quantities greater than necessary or for the sole purpose of infliction of pain" violated the Eighth Amendment of the United States Constitution. *See Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008).

91. Defendants Stout and Dodd violated the Eighth Amendment by using nontrivial physical force, in the form of OC pepper spray, against Plaintiff, without need or to cause pain.

92. On December 27, 2017, it was clearly established that the use of a Taser for the sole purpose of inflicting pain, and in absence of circumstances that present a risk of "immediate danger" to the officers, is excessive and violates the Eighth Amendment of the United States Constitution. *See Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 905 (4th Cir. 2016).

93. Defendants Dempsey, Wilson, Kommer, and John Doe Correctional Officer(s) violated the Eighth Amendment by using nontrivial physical force, in the form of a Taser, against Plaintiff, without need or to cause pain.

94. On both October 21, 2017 and December 27, 2017, it was clearly established that physically assaulting an inmate without justification, including by choking, kicking, and punching the inmate, constitutes excessive force in violation of the Eighth Amendment to the United States Constitution. *See Hudson v. McMillian*, 503 U.S. 1 (1992).

95. Defendants Stout, Dodd, Whitehair, Dempsey, Wilson, Kommer and John Doe Correctional Officer(s) violated the Eighth Amendment by using nontrivial physical force, in the form of physical assaults including kicking, punching and choking Plaintiff, without need or to cause pain.

96. As a direct or proximate result of the Defendants' unconstitutional actions, Plaintiff endured physical pain and suffering, permanent or long-term injuries, mental pain and suffering, humiliation, embarrassment, and degradation.

97. The actions or inactions of said Defendants against Mr. Hurd were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard of the rights owed to Plaintiff, thereby justifying an award of punitive damages.

**WHEREFORE**, the Plaintiff respectfully requests that the Court enter an Order awarding the following damages and relief:

(a) Physical pain and suffering, past and future;

(b) Mental pain and suffering, past and future;

(c) Humiliation, embarrassment, and degradation;

(d) Punitive damages;

(e) Attorney fees and costs, pursuant to 42 U.S.C. § 1988; and

(f) All other damages allowed by law.

## COUNT II
## VIOLATIONS OF THE UNITED STATES CONSTITUTION
## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED
## (42 U.S.C. § 1983)

98. Plaintiff incorporates the preceding paragraphs by reference.

99. Defendants Lye and Wexford, while acting under the color of law, violated Mr. Hurd's Eighth Amendment right to be free from cruel and unusual punishment, by acting with deliberate indifference to his serious medical needs.

100. Defendants violated Mr. Hurd's federal constitutional rights, as described and identified herein, by authorizing, committing, condoning, or failing to remedy the deliberate indifference to a serious medical need exhibited by Plaintiff from on or about December 2017 until Plaintiff's release from DCR custody.

101. Specifically, as stated herein, while at Mount Olive Correctional Complex, Defendants Lye and Wexford failed and refused to refer Plaintiff to a neurologist or other specialist in order to diagnose Plaintiff's loss of use of his legs; failed and refused to provide ongoing physical therapy treatment to Plaintiff; and deprived Plaintiff of medically necessary equipment, specifically a wheelchair, thereby causing Plaintiff to have to drag himself around on the filthy prison floors in order to access the showers, telephones, toilet and other amenities, and preventing Plaintiff from being able to access to outdoor recreation.

102. The actions of the Defendants were in violation of clearly established law.

103. The Eighth Amendment to the United States Constitution forbids cruel and unusual punishment through the deliberate indifference to an inmate's serious medical needs.

104. During the time period at issue, it was clearly established that deliberate indifference to a serious medical need of a prisoner violates the Eighth Amendment of the United States Constitution. *See Estelle v. Gamble*, 429 U.S. 97 (1976).

105. On December 2017, it was clearly established that "the failure to provide a wheelchair for an inmate may constitute deliberate indifference to a serious medical need in some circumstances." *Shakka v. Smith,* 71 F.3d 162, 167 (4th Cir. 1995).

106. Defendants violated the Eighth Amendment by refusing to provide Plaintiff with a wheelchair for various periods of time, resulting in Plaintiff being forced to drag himself on the floor within his cell to reach the toilet and outside the cell to reach the shower and the telephone; and denying Plaintiff access to basic amenities, including access to the sink in his cell and access to outdoor recreation/fresh air.

107. As a direct or proximate result of the Defendants' unconstitutional actions, Plaintiff endured physical pain and suffering, permanent or long-term injuries, mental pain and suffering, humiliation, embarrassment, and degradation.

108. The actions of the Defendants were committed under the color of state law, and were unreasonable, deliberate, and deprived Plaintiff of clearly established constitutional rights of which reasonable correctional officer and/or reasonable prison medical provider should have known pursuant to the Eighth Amendment to the United States Constitution.

109. The actions or inactions of Defendants against Mr. Hurd were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard of the rights owed to Plaintiff, thereby justifying an award of punitive damages.

**WHEREFORE**, the Plaintiff respectfully requests that the Court enter an Order awarding the following damages and relief:

    (a)    Physical pain and suffering, past and future;

    (b)    Mental pain and suffering, past and future;

    (c)    Humiliation, embarrassment, and degradation;

    (d)    Punitive damages;

    (e)    Attorney fees and costs, pursuant to 42 U.S.C. § 1988; and

    (f)    Any other equitable relief that this Court deems appropriate.

## COUNT III
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

110. Plaintiff incorporates the proceeding paragraphs by reference.

111. Plaintiff is a qualified individual with a disability under the Americans with Disabilities Act (ADA).

112. Title II of the ADA, 42 U.S.C. § 12132, provides that "no qualified individual with a disability shall, by reason of disability, be excluded from any participation in or be denied the benefits of the servicers, programs, or activities of a public entity, or be subject to discrimination by such entity."

113. DCR is a public entity subject to and governed by requirements and prohibitions of Title II of the ADA.

114. Wexford and its employees, through contractual arrangements with DCR, are subject to and governed by the requirements and prohibitions of Title II of the ADA.

115. In violation of the ADA and 28 C.F.R. § 35.130(b), Defendants have committed unlawful acts of discrimination, including:

    (a)    failing to afford Plaintiff, a qualified individual with a disability, an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(b) providing Plaintiff, a qualified individual with a disability, with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

(c) limiting Plaintiff, a qualified individual with a disability, in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service;

(d) subjecting Plaintiff, a qualified individual with a disability, to discrimination on the basis of his; and

(e) failing to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability. *See* 28 U.S.C. § 35.130(b)(1)(ii), (b)(1)(iii), (b)(1)(vii), (b)(3)(i), & (b)(7).

116. As alleged herein, by denying Plaintiff access to a wheelchair for months and thereby forcing him to drag himself across filthy floors or be carried by other inmates in order to reach basic amenities; denying Plaintiff access to outdoor time/fresh air as a result of his disability; failing to provide Plaintiff with a referral to a specialist in order to diagnose and treat his loss of use of his legs; and failing to provide Plaintiff with physical therapy to help him regain function in his legs; Defendants have violated Title II of the ADA and its implementing regulations, through intentional discrimination against Plaintiff; deliberate indifference to his disabilities; and violation of the reasonable accommodation requirement of federal law.

117. As alleged herein, Defendants have denied Plaintiff Hurd full and equal treatment as a result of his disability.

118. Therefore, Defendants have discriminated and continue to discriminate against Plaintiff in violation of 42 U.S.C. § 12132 and other substantive requirements and prohibitions of the ADA and its implementing regulations.

**WHEREFORE**, the Plaintiff respectfully requests that the Court enter an Order awarding the following damages and relief:

(a) Physical pain and suffering, past and future;

(b) Mental pain and suffering, past and future;

(c) Humiliation, embarrassment, and degradation;

(d) Punitive damages;

(e) Attorney fees and costs, pursuant to 42 U.S.C. § 12205; and

(f) Any other equitable relief that this Court deems appropriate.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

119. Plaintiff incorporates the preceding paragraphs by reference.

120. Defendants Lye and Wexford intentionally or recklessly conducted themselves in an extreme and outrageous manner by refusing to provide Plaintiff with a wheelchair and instead requiring Plaintiff to drag himself across floors in his cell and in the common areas of the prison, rely on other inmates in order to call him family, and prevented Plaintiff from accessing outdoor time, as well as his sink and the ability to perform basic hygiene functions in a hygienic manner.

121. Defendants knew or should have known that such conduct was reasonably certain to cause Plaintiff severe emotional distress as well as physical harm.

122. Despite this knowledge, Defendants intentionally or recklessly utilized extreme and outrageous conduct against Plaintiff through deliberate indifference to these conditions that amounted to cruel and unusual punishment.

123. Defendants' intentional, extreme and outrageous conduct proximately caused Plaintiff to suffer bodily injury, physical pain, severe emotional distress, humiliation, embarrassment, mental distress, and loss of personal dignity.

124. As a result of such outrageous conduct, Plaintiff has suffered severe mental anguish, embarrassment, humiliation, physical injury, and has otherwise greatly been damaged by Defendants' violations of his rights and is therefore entitled to compensatory damages as well as punitive damages.

**WHEREFORE**, the Plaintiff respectfully requests that the Court enter an Order awarding the following damages and relief:

(a) Appropriate equitable relief;

(b) Actual and punitive damages;

(c) Reasonable attorney's fees and the cost of this litigation; and

(d) Such other relief the Court deems equitable and just.

## COUNT V
## ASSAULT AND BATTERY

125. Plaintiff incorporates the proceeding paragraphs by reference.

126. By making threatening the use of force against Plaintiff, Defendants Stout, Dodd, Whitehair, Dempsey, Wilson, Kommer and John Doe Correctional Officer(s) intended to create an apprehension within Plaintiff of immediate physical harm.

127. As a result of said Defendants' threatening conduct, Plaintiff felt threatened and was put in imminent apprehension of being harmed.

128. Defendants Stout, Dodd, Whitehair, Dempsey, Wilson, Kommer and John Doe Correctional Officer(s) intentionally battered Plaintiff as described above.

129. As a direct result of being battered, Plaintiff suffered injuries.

130. In addition to the physical injuries caused by Defendants Stout, Dodd, Whitehair, Dempsey, Wilson, Kommer and John Doe Correctional Officer(s) assault and battery of Plaintiff, Plaintiff has suffered multiple forms of mental anguish, including but not limited to, fear, nightmares, anxiety, embarrassment, humiliation, and depression.

131. Defendants are liable for their inappropriate conduct and the use of excessive force.

132. Defendants used the force maliciously and sadistically for the purpose of inflicting pain; Plaintiff is therefore entitled to compensatory damages as well as punitive damages.

**WHEREFORE**, the Plaintiff respectfully requests that the Court enter an Order awarding the following damages and relief:

(a) Appropriate equitable relief;

(b) Actual and punitive damages;

(c) Reasonable attorney's fees and the cost of this litigation; and

(d) Such other relief the Court deems equitable and just.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

**DWIGHT HURD**
**By Counsel,**

/s/Lydia C. Milnes
Lydia C. Milnes (WVSB # 10598)
Jennifer S. Wagner (WVSB # 10639)
Mountain State Justice, Inc.
325 Willey Street
Morgantown, WV 26505
(304) 326-0188
(304) 326-0189 (facsimile)
*lydia@msjlaw.org*