IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DWIGHT HURD,

                Plaintiff,

v.                                      CIVIL ACTION NO.   2:19-cv-00760

DR. CHARLES LYE, et al.,

                Defendants.

MEMORANDUM OPINION & ORDER

Pending before the court are three Motions by Defendants, Dr. Charles Lye and Wexford Health Sources, LLC. First, Defendants filed a Motion for Summary Judgment. [ECF No. 113]. Defendants also filed Motions to seal some exhibits attached to the Motion for Summary Judgment [ECF No. 145] and to seal some exhibits attached to their reply to Plaintiff's response [ECF No. 129]. For reasons discussed further below, Defendants' Motions are **GRANTED**.

Before turning to the substance of Defendants' Motions, I must determine which claims remain. In Plaintiff's response to the Motion for Summary Judgment [ECF No. 124], he noted that "Plaintiff hereby voluntarily dismisses all claims against Defendant Wexford Health Sources, LLC, and dismisses his claim under the Americans with Disabilities Act (Count III) as to all defendants . . . ." [ECF No. 124, 1 n.1]. However, the parties have not filed anything on the record in line with Federal

Rule of Civil Procedure 41(a)(1)(ii) which permits a plaintiff to dismiss an action by filing "a stipulation of dismissal by all parties who have appeared." Because nothing has been filed seeking an order of dismissal for Defendant Wexford Health Sources, LLC, or the Disabilities Act claim against Defendant Dr. Charles Lye, and Plaintiff has not responded to Defendants' Motion for Summary Judgment on these counts, I find that there is merit to Defendants' Motions for Summary Judgment on all counts against Defendant Wexford Health Sources, LLC, and the Disabilities Act claim against Defendant Dr. Charles Lye. The Motion for Summary Judgment on those counts is **GRANTED**.

Having determined this, the only claims remaining that are addressed by Defendants' Motion for Summary Judgment are an Eighth Amendment claim brought against Dr. Charles Lye and an intentional infliction of emotional distress claim brought against Dr. Charles Lye.

## I.    Factual Background

The facts of Mr. Hurd's interactions with Dr. Lye are uncontested. Mr. Hurd was imprisoned at Mount Olive Correctional Complex. Prior to his first meeting with Dr. Lye, Mr. Hurd had been subject to the use of force by correctional officers, staged a suicide attempt, and received an x-ray and a CT scan of his cervical spine.

At his first meeting with Dr. Lye on November 1, 2017, Mr. Hurd complained that he was having trouble moving his left side and requested the use of a wheelchair. [ECF No. 113, Ex. 8]. Dr. Lye granted him limited use of a wheelchair at that time.

On November 7, 2017, a nurse examined Mr. Hurd and noted that his toes responded to her touch. [ECF No. 113, Ex. 9].

When he was examined on November 13, 2017, to be discharged from suicide watch, Dr. Lye noted that Mr. Hurd continued to complain of numbness and weakness in his left hand and leg, stating "no medical condition accounted for his symptom[s]. He had behavior problem. No medical problem. Plan. No specific treatment rendered." [ECF No. 113, Ex. 9]. Mr. Hurd was permitted to use a wheelchair until December 19, 2017. Dr. Lye then determined that Mr. Hurd did not medically require the wheelchair and revoked his use of it. [ECF No. 113, Ex. 11].

Mr. Hurd was then briefly transferred to Stevens Correctional Center only to be returned to Mount Olive Correctional Complex on December 27, 2017. When he arrived back at Mount Olive, Mr. Hurd was subject to a second use of force by correctional offices. He requested a wheelchair from a nurse practitioner, complaining, among other things, that he was having to drag himself across the ground to use the toilet. The nurse practitioner confirmed that Mr. Hurd's lower extremities had atrophied and were abnormally thin. The nurse practitioner demonstrated physical therapy exercises that Mr. Hurd could use to strengthen his limbs and Mr. Hurd successfully completed those exercises. The nurse practitioner then denied him the use of a wheelchair and diagnosed him with bilateral lower extremity weakness and suspected that Mr. Hurd was intentionally refusing to move his lower limbs. [ECF No. 113, Ex. 15].

In January 2018, Mr. Hurd was referred to physical therapy and was permitted to use a wheelchair while waiting for his physical therapy to begin. Mr. Hurd finally met with a physical therapist on January 24, 2018. The physical therapist diagnosed Mr. Hurd with paraplegia unknown etiology. [ECF No. 113, Ex. 17]. He then prescribed Mr. Hurd with a "home" exercise program and recommended that Mr. Hurd be seen by a neurologist. Mr. Hurd was only able to complete his physical therapy regimen twice. [ECF No. 113, Ex. 19].

On January 25, 2018, Mr. Hurd again met with the nurse practitioner who passed along the physical therapist's request to Dr. Lye. [ECF No. 113, Ex. 18]. Dr. Lye determined that a neurological consultation was not necessary. [ECF No. 124, Ex. 6, at 57:4–11, 58:5–7].

Dr. Lye again evaluated Mr. Hurd for wheelchair use on March 8, 2018. He completed the exam and ordered an x-ray. On March 22, 2018, Dr. Lye discontinued his wheelchair, noting that "there is no medical reason/evidence for him to have a wheelchair. Symptom of paraplegia was inconsistent with upper or lower motor neuro pathology. The most likely diagnosis was Somatic symptom disorder." [ECF No. 113, Ex. 22]. To encourage Mr. Hurd to use his legs, Dr. Lye replaced the wheelchair with a walker. It is uncontested that Mr. Hurd was able to use the walker at times.

On May 17, 2018, Dr. Lye returned the wheelchair to Mr. Hurd. Mr. Hurd was later transferred to St. Mary's Correctional Center until he was released from the custody of the state of West Virginia in Summer 2019. On July 29, 2020, a

psychiatrist diagnosed Mr. Hurd with conversion disorder as the explanation for the limited use of his legs.

## II.   Applicable Law

### a.   Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. A court "may grant summary judgment only if, taking the facts in the best light for the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence" in support of the nonmoving party is not

enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### b.  Deliberate Indifference under the Eighth Amendment

"In order to state a cognizable claim for denial of medical care under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To succeed on such a claim, a plaintiff must offer "proof that the medical need in question is objectively 'serious,' and that the defendant acted with subjective indifference, meaning he or she 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Adams v. Ferguson*, 884 F.3d 219, 227 (4th Cir. 2018) (alterations in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994)).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). Further, the subjective mental state required of a deliberately indifferent actor is "more than mere negligence." *Farmer*, 511 U.S. at 835. It is instead "somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (citing *Farmer*, 511 U.S. at 835). This means that:

> a prison official cannot be found liable under the Eighth
> Amendment for denying an inmate humane conditions of

6

> confinement unless the official knows of and disregards an
> excessive risk to inmate health or safety; the official must
> both be aware of facts from which the inference could be
> drawn that a substantial risk of serious harm exists, and
> he must also draw the inference.

*Farmer*, 511 U.S. at 837. "Under this standard, mere '[d]isagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances." *Scinto v. Stansbury*, 841 F.3d 219, 226–27 (4th Cir. 2016) (alteration in original) (quoting *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)); *accord Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) ("Questions of medical judgment are not subject to judicial review.").

### c.  Intentional Infliction of Emotional Distress

To recover for intentional infliction of emotional distress under West Virginia Law, a plaintiff must show

> (1) that the defendant's conduct was atrocious, intolerable,
> and so extreme and outrageous as to exceed the bounds of
> decency; (2) that the defendant acted with the intent to
> inflict emotional distress, or acted recklessly when it was
> certain or substantially certain emotional distress would
> result from his conduct; (3) that the actions of the
> defendant caused the plaintiff to suffer emotional distress;
> and, (4) that the emotional distress suffered by the plaintiff
> was so severe that no reasonable person could be expected
> to endure it.

*Miller v. Rubenstein*, No. 2:16-CV-05637, 2018 WL 736044, at *16–17 (S.D. W. Va. Feb. 6, 2018). "These elements present a high bar to recovery." *Murray v. Lilly*, 426 F. Supp. 3d 245, 257 (S.D. W. Va. 2019). "Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous

7

is a question for jury determination." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 778 (S.D. W. Va. 2015) (quoting *Hatfield v. Health Mgmt. Assoc. of W. Va.*, 223 W. Va. 259, 268, 672 S.E.2d 395 (2008)).

### III.   Analysis

Mr. Hurd asserts that his lower limb weakness and difficulty walking were a result of conversion disorder and that Dr. Lye should have known this, diagnosed him with conversion disorder, and provided different treatment. Mr. Hurd contends that Dr. Lye violated Mr. Hurd's Eighth Amendment rights in three ways: by removing Mr. Hurd's wheelchair; by not referring him for psychiatric treatment; and by not ensuring that he received physical therapy. [ECF No. 124, at 18].

Conversion disorder, also known as functional neurological symptom disorder, is a psychiatric disorder which manifests as a loss of function in the nervous system without any physical explanation. [ECF No. 124-1, at 4]. According to Mr. Hurd's expert, "[d]uring the functional loss it is helpful and necessary to provide assistive supports like a wheelchair if available. Physical therapy is helpful for individuals with paralysis not explained by physical findings. . . . [A] patient with conversion disorder or suspected conversion disorder should be referred to psychiatry or neurology if either specialty is available." *Id.* Essentially, Mr. Hurd argues that Dr. Lye never properly treated him for conversion disorder that he was suffering from.

But the subjective element of an Eighth Amendment claim requires that Dr. Lye have deprived Mr. Hurd of this treatment and have known that the treatment

8

was necessary. Neither Dr. Lye, nor any other medical professional at Mount Olive Correctional Complex, ever diagnosed Mr. Hurd with conversion disorder. During his time at Mount Olive, Mr. Hurd was diagnosed with somatic symptom disorder by Dr. Lye, with bilateral lower extremity weakness by a nurse practitioner, and with paraplegia unknown etiology by a physical therapist. In addition, many health providers suspected that Mr. Hurd was able to use his lower extremities but was intentionally not using them for some secondary gain.

There is no question that there is a dispute over what Mr. Hurd's diagnosis should have been while at Mount Olive Correctional. However, there is no dispute over what Dr. Lye knew and what is actions were. With the evidence presented, I cannot find that Dr. Lye's actions amount to the high standard of a deliberate indifference claim. As I stated above, "mere '[d]isagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances." *Scinto v. Stansbury*, 841 F.3d 219, 226–27 (4th Cir. 2016) (alteration in original) (quoting *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)); *accord Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) ("Questions of medical judgment are not subject to judicial review.").

Further, Mr. Hurd had access to, or did receive the treatment that Mr. Hurd and his experts claim he should have received for conversion disorder, despite that he was never diagnosed with conversion disorder while at Mount Olive Correctional. First, Mr. Hurd had access to mental health care the entire time he was imprisoned

9

at Mount Olive Correctional with or without a referral from Dr. Lye. [ECF No. 131-1]. Second, while Dr. Lye did remove Mr. Hurd's access to a wheelchair and provide him with a walker to encourage him to attempt walking, Mr. Hurd's expert witness Dr. McDuffie agrees that this is at times an appropriate treatment. [ECF No. 131, Ex. 3, at 80:16–25, 81:1–16, 96:20–25, 97:1–15]. Finally, Mr. Hurd contends that Dr. Lye should have been personally overseeing Mr. Hurd's ability to complete his physical therapy. But Dr. Lye is not a physical therapist; he would not be the one conducting these exercises with Mr. Hurd. Mr. Hurd was unable to complete his physical therapy because he was on suicide watch—preventing him from having permanent access to exercise bands on his own—and because of staffing and security issues at the prison. The staffing and security at Mount Olive Correctional are not within Dr. Lye's purview. I cannot find that any exceptional circumstances exist here to bring this disagreement between Mr. Hurd and his doctor, Dr. Lye, to the level of a constitutional violation. Dr. Lye's Motion for Summary Judgment on Mr. Hurd's Eighth Amendment claim is **GRANTED.**

In considering, Mr. Hurd's intentional infliction of emotional distress claim, it is a question of law whether Dr. Lye's conduct could reasonably be considered outrageous. *Weigle v. Pifer*, 139 F. Supp. 3d 760, 778 (S.D. W. Va. 2015). Here, no evidence has been presented that Dr. Lye was aware that Mr. Hurd was dragging himself across the floor to access the bathroom and showers. At best, the evidence presented shows a disagreement between Mr. Hurd's and Dr. Lye's experts about

what the proper diagnosis should have been and what the proper treatment should have been. I cannot find that a disagreement over this exercise of Dr. Lye's medical judgment could reasonably rise to the level of "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." *Miller v. Rubenstein*, No. 2:16-CV-05637, 2018 WL 736044, at *16–17 (S.D. W. Va. Feb. 6, 2018). Dr. Lye's Motion for Summary Judgment on Mr. Hurd's intentional infliction of emotional distress claim is **GRANTED.**

Further, having reviewed the attachments to Defendants' Motions to Seal exhibits included with the Motion for Summary Judgment and the Reply [ECF Nos. 129, 148], I find that protecting Mr. Hurd's private medical information outweighs the public's interest of access in this case, and these Motions are **GRANTED.**

## IV.   Conclusion

Defendants' Motion for Summary Judgment [ECF No. 113] and Defendants' Motions to Seal [ECF Nos. 129, 148] are **GRANTED.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      March 18, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE